IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,          :
  ex rel. TERRI DUGAN              :

                          :   Civil Action No. DKC 2003-3485

ADT SECURITY SERVICES, INC.   :

                          :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case arising under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* are: (1) a motion to dismiss Plaintiff/Relator Terri Dugan's third amended complaint filed by Defendant ADT Security Services, Inc. ("ADT") (Paper 122); and (2) a motion for leave to file surreply and a request for oral argument filed by Plaintiff/Relator Terri Dugan. (Paper 131). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion to dismiss will be granted partially on subject matter jurisdiction grounds and partially for failure to state a claim, and Plaintiff's motion for leave to file surreply and for oral argument will be denied.

I. **Background**

The facts of this case have already been set forth in Paper 107, and will be reiterated here. Defendant ADT sells fire

protection and security services to residential and commercial customers, as well as to federal, state, and local governments. For the last twenty years, Defendant has had a contract with the United States General Services Administration, Federal Supply Service ("GSA"). Defendant sells to the United States through a GSA Multiple Award Schedule ("MAS"), a list of contracts that GSA awards to multiple companies that supply comparable services and products. The MAS provides federal agencies with a simplified process for obtaining commonly used commercial supplies and services at reasonable prices. To ensure that the government obtains the most competitive price from vendors, vendors must provide GSA with a substantial amount of information about their commercial sales practices.

Plaintiff/Relator Terri Dugan worked for Defendant for eleven years from 1995 to 2006. Between 2002 and 2004, Plaintiff served as the manager of Defendant's GSA contract with the United States. In this capacity, Plaintiff discovered allegedly false claims that Defendant had made to GSA. Specifically, Plaintiff alleges that Defendant provided GSA with a false commercial price list, made a fraudulent bid for the 1996 GSA Contract, and failed to disclose its general pricing and labor pricing methodology to GSA. On November 24, 2003, Plaintiff voluntarily met with the United States Attorney's Office for the District of Maryland to discuss Defendant's

alleged misconduct. Plaintiff filed a complaint against Defendant on December 8, 2003. (Paper 1).

In accord with the procedures established by the FCA, the *qui tam* complaint was served on the government and filed under seal. During the period before the complaint was served on Defendant, the government had an opportunity to intervene and pursue the litigation. *See* 31 U.S.C. § 3730(b)(2). Alternatively, it could decline and let Plaintiff pursue the litigation on her own. *See* 31 U.S.C. § 3730(b)(4). Here, the government sought and obtained at least ten extensions of time to undertake its own investigation, eventually until August 28, 2007, when it finally decided not to intervene. Once the government declined to intervene, it retained the right to be served with copies of pleadings and to receive copies of deposition transcripts.

During the time this case was under seal in 2004, GSA began auditing Defendant based on information it had learned through Plaintiff's disclosures. Plaintiff met with GSA auditors and government attorneys to help them conduct their audit and investigation. Plaintiff states that GSA never shared any of its audit findings with her nor did it ever show her any reports of the audit. (Paper 72, Plaintiff Decl.).

On August 12, 2005, the Office of Inspector General ("OIG") issued a subpoena ordering Defendant to produce all records from

January 1, 2005 onward regarding its GSA contract. OIG requested thirty-nine different items including GSA contracts, organizational charts, correspondence, and commercial sales-related documents. On December 8, 2006, GSA issued a preliminary report about Defendant's activities based on the information it had obtained through subpoena.

On December 29, 2006, more than three years after filing her initial complaint, Plaintiff filed a first amended complaint. (Paper 16). She then filed a second amended complaint on July 3, 2007, asserting three counts under the FCA. 31 U.S.C. §§ 3729(a)(1), 3729(a)(2), and 3729(a)(7). (Paper 25). The relevant statutory language is as follows:

(a) Any person who –

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false and fraudulent claim for payment or approval;

> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; . . .

> (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,

> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages which the Government sustains because of the act of that person . . . .

4

31 U.S.C. § 3729(a).  On September 5, 2007, the court unsealed Plaintiff's second amended complaint and ordered Plaintiff to serve the complaint on Defendant.

On November 13, 2007, GSA issued a draft of a second audit report with detailed information about its investigation of Defendant's activities.  The report found that Defendant failed to comply with the prompt payment terms of the GSA contract, underreported GSA sales transactions, and improperly billed sales tax and freight charges to certain government customers. The report concluded that as a result of Defendant's fraudulent payment practices, the government was entitled to a refund of $993,179.  Defendant is disputing the government's findings, and the government and Defendant are currently in negotiations.

On December 26, 2007, Plaintiff served the second amended complaint on Defendant.  Defendant subsequently filed a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) and for failure to state claims under Fed.R.CivP. 12(b)(6).  (Paper 56).  The court denied Defendant's motion to dismiss without prejudice.  (Paper 108).  The court also gave Plaintiff leave to amend her complaint after determining that Plaintiff had failed to plead sufficiently when, where, and how she obtained the information giving rise to the allegations in her complaint.  The court found that

Plaintiff's general allegations made it difficult to ascertain whether her claims were jurisdictionally barred under the "public disclosure bar" of the FCA, 31 U.S.C § 3730(e)(4). Plaintiff filed a third amended complaint on November 9, 2008. (Paper 111).   Defendant subsequently filed a motion to dismiss the third amended complaint for lack of subject matter jurisdiction and failure to state claims.   (Paper 122).

The third amended complaint contains five counts: (1) fraud in the inducement of ADT's 1996 contract under 31 U.S.C. § 3729(a)(1); fraud with respect to combined sales of parts and labor under ADT's 1996 contract under 31 U.S.C. § 3729(a)(1); (3) other false claims ADT presented to the government for payment or approval; (4) false records and statements ADT made to get false or fraudulent claims paid or approved by the government under 31 U.S.C. § 3729(a)(2); and (5) FCA violations under U.S.C. § 3729(a)(7).[1]

## II. Jurisdiction

Defendant argues that Plaintiff's complaint should be dismissed for lack of subject matter jurisdiction for three reasons: (1) Plaintiff's claims are barred under 31 U.S.C. § 3730(e)(4)(A) because they are based on public disclosures and

---

[1] Plaintiff's third amended complaint contains five counts, though Plaintiff lists the fifth count as "Count IX."  The court refers to the fifth count as "count five."

Plaintiff cannot establish that she is an "original source" of the information; (2) Plaintiff's claims are barred under 31 U.S.C. § 3730(e)(3) because they are based upon allegations that are the subject of an existing administrative proceeding; and (3) Plaintiff's claims are barred by the FCA's statute of limitations.

### A.    Statute of Limitations

It is not yet clearly resolved whether a statute of limitations defense under the FCA is properly analyzed as a bar to subject matter jurisdiction or as a failure to state a claim. At least a few courts have analyzed whether FCA claims are time-barred under Fed.R.Civ.P. 12(b)(1). *See, e.g.*, *United States v. Hughes Aircraft Co.*, 162 F.3d 1027 (9th Cir. 1998), *cert. denied*, 534 U.S. 1040 (2001) (noting that the district court dismissed the plaintiff's *qui tam* action for lack of subject matter jurisdiction because the claim was time-barred); *United States ex rel. Manion v. St. Luke's Reg'l Medical Ctr., Ltd.*, 2008 WL 906022 (D.Idaho Mar. 31, 2008) (analyzing statute of limitations defense under the FCA as a jurisdictional bar).  It appears, however, that the majority of courts treat the statute of limitations as a failure to state a claim under Fed.R.Civ.P. 12(b)(6).  *See, e.g.*, *United States ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F.Supp.2d 805 (E.D.Tex. 2008) (finding that a Rule 12(b)(6) motion to dismiss for failure to state a

claim is the proper vehicle to assert a limitations defense under the FCA); *Elemary v. Philipp Holzmann A.G.*, 533 F.Supp.2d 116 (D.D.C. 2008) (dismissing the plaintiff's FCA claim under Rule 12(b)(6) because the statute of limitations had run); *United States ex rel. Health Outcomes Tech. v. Hallmark Health Sys., Inc.*, 409 F.Supp.2d 43 (D.Mass. 2006) (same).

The statute of limitations is an affirmative defense that a party typically must raise in a pleading under Fed.R.Civ.P. 8(c) and is not usually an appropriate ground for a Rule 12(b)(6) motion to dismiss. *See Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D.Md. 2002); *Gray v. Mettis*, 203 F.Supp.2d 426, 428 (D.Md. 2002). However, dismissal is proper "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996); *see* 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 714 (3[d] ed. 2004) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6).").

The FCA's statute of limitations provision states:

A civil action under section 3730 may not be brought –

(1)   more than 6 years after the date on which the violation of section 3729 is committed, or

(2)   more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,

whichever occurs last.

31 U.S.C. § 3731(b).

In cases where the government has not intervened, the three-year tolling period provided for in § 3731(b)(2) is not available to a relator. *United States ex rel. Sanders v. N. Am. Bus Indus., Inc.*, 546 F.3d 288, 293 (4th Cir. 2008). Thus, in this case, where the government has not intervened as a party, the applicable statute of limitations for Plaintiff's claims is six years.

The FCA does not expressly address when the statute of limitations stated in § 3731(b)(1) begins to run. Section 3731(b)(1) only states that the six-year statute of limitations starts to run when a "violation of section 3729 is committed." The United States Court of Appeals for the Fourth Circuit has not clarified whether a "violation" is considered to be the submission of a claim for payment to the government or the

actual payment of a claim by the government. Courts in the majority of the federal circuits have concluded that the statute of limitations starts to run when a false claim is submitted to the government.[2]  In contrast, one court has held that the time the United States actually pays a false claim triggers the statute of limitations.  *United States ex rel. Duvall v. Scott Aviation, a Div. of Figgie Int'l Inc.*, 733 F.Supp. 159, 161 (W.D.N.Y. 1990).  Some courts have adopted an in-between position, holding that the date that the claim was paid triggers the statute of limitations if the plaintiff seeks damages, but the date that the claim was submitted triggers the statute of limitations if the plaintiff only seeks penalties.[3]

Here, Plaintiff purports to seek damages based on "the difference in amount that the Government purchasers paid as a

---

[2] *See, e.g., United States ex rel. LaValley v. First Nat. Bank of Boston*, 707 F.Supp. 1351, 1352 n.2 (D.Mass 1988); *Smith v. United States*, 287 F.2d 299, 204 (5th Cir. 1961); *United States v. Ueber*, 299 F.2d 310, 312-13 (6th Cir. 1962); *United States ex rel. Vosika v. Starkley Laboratories, Inc.*, 2004 WL 2065127 (D.Minn. 2004); *United States ex rel. Condie v. Board of Regents of University of California*, 1993 WL 740185 *3 (N.D.Cal. 1993); *United States ex. rel. Colunga v. Hercules, Inc.*, 1998 WL 310481 (D.Utah 1998); *United States v. Etin*, 750 F.Supp. 512, 517 (S.D.Fla. 1990); *United States v. Vanoosterhout*, 898 F.Supp. 25 (D.D.C. 1995), *judgment aff'd*, 96 F.3d 1491 (D.C. Cir. 1996).

[3] *See, e.g., United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1157 (2d Cir. 1993), *cert. denied*, 508 U.S. 973 (1993); *United States v. Klein*, 230 F.Supp. 426, 441-42 (W.D.Pa. 1964), *order aff'd*, 356 F.2d 983 (3d Cir. 1966); *United States v. Tech Refrigeration*, 143 F.Supp.2d 1006, 1007 (N.D. Ill. 2001); *Jana, Inc. v. United States*, 41 Fed.Cl. 735, 743 (Ct.Fed.Cl. 1998).

result of . . . misconduct and the price the Government purchasers would have paid had complete, accurate, and current cost and pricing information been provided." (Paper 111 ¶ 190). The third amended complaint also seeks a civil penalty for each violation. (Paper 111, Prayer for Relief, ¶ 2). As will be more fully discussed below, however, Plaintiff fails to allege with precision the making or payment of any particular claim. The third amended complaint is based significantly on events dating back to 1995, but the original complaint was not filed until December 8, 2003. Applying the six-year statute of limitations, any claims that rely solely on claims submitted to or paid by the government before December 8, 1997 are barred.

Plaintiff's count one is barred by the statute of limitations. First, count one alleges that Defendant fraudulently induced the Government to enter into a contract in 1996 in that Defendant knowingly failed to disclose a material change in its pricing methodology despite an obligation to do so. (Paper 111 ¶ 192). All of the conduct on which this allegation is based occurred before December 8, 1997. Second, count one argues that "all claims ADT submitted to [the government] for payment or approval of purchases made pursuant to [the 1996] contract are false and fraudulent within the meaning of the False Claims Act." (Paper 111 ¶ 194). Plaintiff's complaint does not identify any specific false claim

11

that Defendant made to the government for payment or any specific payment from the government to Defendant for a false claim between December 8, 1997 and the summer of 2007. The United States Court of Appeals for the First Circuit has stated, "[e]vidence of an actual false claim is 'the *sine qua non*' of a False Claims Act violation." *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 225 (1st Cir. 2004), *cert. denied*, 543 U.S. 820 (2004). This complaint suffers from the same deficit as the complaint in *Sanders*, 546 F.3d. at 297, n. 3. The only theory for count one is the fraudulent inducement argument and no independent FCA violations are alleged within the statutory period.[4]

Likewise, a significant part of count two is based on conduct that occurred before December 8, 1997. Count two alleges that ADT continued to violate its duty to disclose all relevant details of its commercial systems pricing methodology each time it submitted updates to its Federal Supply Schedule after GSA approved the 1996 contract and that ADT violated an obligation to explain its commercial pricing methodology to GSA

---

[4] To the extent that the statute of limitations defense would not be a complete bar to count one, Federal Rule of Civil Procedure 12(b)(6) provides an alternative basis for dismissal of Plaintiff's second allegation in count one because Plaintiff has failed to identify any particular false claim submitted to or paid by the government.

in 1997 when ADT sought to have a special item number for installation labor and other services added to its 1996 contract.   The assertion that ADT violated an obligation to explain its commercial pricing methodology to GSA in 1997 obviously occurred before the cut-off date.   In relation to that conduct, Plaintiff states that ADT wrote to GSA on January 14, 1997, asking to have labor added to ADT's Federal Supply Schedule.   (Paper 111 ¶ 73).   Plaintiff reports that GSA wrote to ADT on February 11, 1997, asking for information regarding how labor services were priced commercially.   (*Id.* at ¶ 75).   ADT's 1996 contract was amended on March 19, 1997 to include new regulations related to labor services.   (*Id.* at ¶ 77).   Plaintiff alleges that in or about May or June of 1997, ADT's GSA contract was amended to add a special item number to cover labor.   (*Id.* at ¶ 78).   All of these events occurred before the December 8, 1997 statute of limitations cut-off date, and therefore, as with count one, claims based on that theory are time-barred.   Count two asserts that, at least since 1997, ADT has routinely overcharged Government purchasers using the 1996 when the claim included charges for labor.   Plaintiff's claims in count two again are not specified and are barred to the extent the claims were submitted or paid before December 8, 1997, and maybe thereafter unless there is an independent basis for a FCA claim.

**B.    31 U.S.C. § 3730(e)(4)**

The FCA provides the following restriction on subject matter jurisdiction:

Section 3730(e)(4) provides:

(A)  No Court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions which are the subject of a . . . civil or administrative hearing, [or] in a[n] . . . administrative . . . audit or investigation . . . unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B)  For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government . . . .

31 U.S.C. § 3730(e)(4).

A court's analysis of whether a plaintiff's claims are barred by § 3730(e)(4) depends on the answer to three questions: 1) was there a public disclosure?; 2) are the plaintiff's allegations based upon that public disclosure?; and 3) is the plaintiff an original source of the information on which his allegations are based? *United States ex rel. Wilson v. Graham County Soil & Water Conservation Dist.*, 528 F.3d 292, 299 (4th Cir. 2008), *cert. granted*, 129 S. Ct. 2824 (2009).   A plaintiff's allegations are not barred in two situations: 1) if the plaintiff's claims are not based on a public disclosure or

2) if the plaintiff is an original source though her allegations are based on a public disclosure.

The question of whether the public disclosure bar prohibits a relator from proceeding with a *qui tam* case is a question of subject matter jurisdiction and may be raised at any time. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 467-68 (2007). A *qui tam* plaintiff, seeking to invoke the court's jurisdiction, bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *United States ex rel. Robert D. Ackley v. Int'l Business Machines Corp.*, 76 F.Supp.2d 654, 658 (D.Md. 1999); *United States ex. rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1199 (9th Cir. 2009) ("Relators, as the *qui tam* plaintiffs, bear the burden of establishing subject-matter jurisdiction by a preponderance of the evidence."). The plaintiff must meet her burden of proof for the public disclosure bar and its original source exception on a claim-by-claim basis. *Rockwell*, 549 U.S. at 476.

In considering a Rule 12(b)(1) motion to dismiss, the court is not limited to the challenges to jurisdiction appearing on the face of the complaint. Rather, the court may consider extrinsic evidence to determine the facts. *Ackley* at 659, *citing Thigpen v. United States*, 800 F.2d 393, 396 (4th Cir. 1986) (subsequent history omitted). When jurisdictional facts are disputed, a presumption of truthfulness does not attach to

the plaintiff's allegations. *Id*. at 659. Thus, the court has considered the allegations in Plaintiff's complaint, third amended complaint, and the declaration attached to Plaintiff's opposition in response to Defendant's motion to dismiss. (Papers 1, 111, and 125).

The first issue is whether there was a public disclosure. Under the FCA, "federal administrative reports, audits or investigations qualify as public disclosures." *Graham*, 528 F.3d at 301. Here, Defendants allege that five forms of qualifying public disclosures were made that would trigger the public disclosure bar: "(1) the GSA's 1991 Audit and corresponding Report; (2) the GSA's 1995 Audit and corresponding Report; (3) the GSA's 2004 administrative investigation into ADT's pricing and billing practices (which investigation resulted in the production of the 2006 and 2007 GSA Audit Reports); (4) the GSA's 2006 Audit and corresponding Report; and (5) the GSA's 2007 Audit and corresponding Report." (Paper 122, at 27) (internal citations omitted). All of these documents fall squarely within the statute's definition and are therefore public disclosures.

The second question is whether the plaintiff's allegations were based upon the public disclosures that were made. The United States Court of Appeals for the Fourth Circuit has held that a "*qui tam* action is based upon publicly disclosed

allegations only if the *qui tam* plaintiff's allegations were actually derived from the public disclosure itself." *Graham*, 528 F.3d 292, 308 (4th Cir. 2008). Mere similarity or even identity between a *qui tam* plaintiff's claims and the publicly disclosed allegations will not automatically bar a claim. *United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1348 (4th Cir. 1994), *cert. denied*, 513 U.S. 928 (1994). An action that is based even in part on publicly disclosed allegations or transactions triggers the jurisdictional bar. *Ackley*, 76 F.Supp.2d at 661-62.

This court previously acknowledged that Plaintiff's initial disclosures to the government about Defendant's alleged fraud were not derived from public disclosures because the government had not begun investigating Defendant at the time that Plaintiff filed her *qui tam* action. (Paper 107, at 23). The court explained, however, that it was impossible to determine what allegations Plaintiff subsequently added to her amended complaints or whether any new allegations were based, or at least partially based, on the 2006 and 2007 GSA audit reports because Plaintiff had failed to particularize her claims. Indeed, the original complaint only provided particular facts as to the topic of Defendant's alleged claims that included wrongfully inflated labor charges. The court directed Plaintiff to "delineate clearly the dates on which any claim arose," and

to "specifically explain when, where, and how" she obtained
information about Defendant's alleged misconduct.  (Paper 107,
at 24).

Defendant has catalogued numerous examples of similarities
between Plaintiff's third amended complaint and changes that
Plaintiff made to her first and second amended complaints after
the 2006 and 2007 Audit Reports were released.  The court finds
compelling Defendant's statement: "Following the GSA's
disclosures of the 2006 and 2007 Audit Reports, the Relator's
complaint has ballooned from 45 pages (156 paragraphs of
allegations) to 77 pages (226 paragraphs of allegations), with a
remarkably similar overlap (undisputed by the Relator) between
the allegations and the underlying public disclosures."  (Paper
122, at 31).  Defendant provides several examples of changes
that Relator made to the language in her allegations that
reflect terminology used in the 2006 and 2007 Audit Reports.
(Paper 122, at 31-32).  Defendant also notes that Plaintiff
added to her complaint some allegations regarding "big box"
stores as a result of Plaintiff's counsel's discussions with GSA
auditors.  (Paper 122, at 32; Paper 72, Attach. 2, Decl. of
Peter W. Chatfield, ¶ 8).  Though Plaintiff argues that all of
her allegations are not based upon publicly disclosed material,
the court finds that the evidence points to the contrary.  Thus,

Plaintiff's allegations in her third amended complaint are at least in part based on public disclosures.

If the plaintiff's allegations are based in whole or in part on a public disclosure, the third finding that the court must make is whether the relator is an original source of the information on which the allegations are based. A relator is an "original source" if she has "direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government." 31 U.S.C. § 3730(e)(4)(B). The United States Supreme Court has held that the term "allegations" is not limited to the allegations in the original complaint, but includes, at a minimum, the allegations in the original complaint as amended. *Rockwell*, 549 U.S. at 473.

To meet her burden, Plaintiff must "allege specific facts – as opposed to mere conclusions – showing exactly how and when he or she obtained direct and independent knowledge of the fraudulent acts alleged in the complaint and support those allegations with competent proof." *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1162 (10th Cir. 1999). The Fourth Circuit has clarified that "[a] relator's knowledge is 'direct' if he acquired it through his own efforts, without an intervening agency, and it is 'independent' if the

knowledge is not dependent on public disclosure." *Grayson v. Advanced Mgmt. Tech.*, 221 F.3d 580, 583 (4th Cir. 2000).

The record plainly establishes that Plaintiff voluntarily disclosed some information to the government before she filed her complaint and before the government's public disclosures. Plaintiff's original complaint was the only complaint filed before the public disclosures at issue – the 1996 and 1997 audit reports – were released.  Thus, the factual allegations in Plaintiff's original complaint are evidence of what information or knowledge Plaintiff had apart from any public disclosure. Unfortunately for Plaintiff, the broadly-worded original complaint only contained particularized facts for two of the topics she addressed: (1) inflated labor charges (Paper 1 ¶¶ 67-109) and (2) Defendant's violation of the best pricing and price reduction clause of its GSA contract (*Id.* at ¶¶ 11-117).  On the topic of inflated labor charges, Plaintiff alleged that Defendant manipulated the parts and labor costs in its estimates on specific dates for specific government contracts and submitted specific claims for payment.  As discussed below under the analysis of count two, claims based on that factual allegation can survive the jurisdictional inquiry to the extent that there are any claims within the limitations period or sufficiently pled under Rule 12(b)(6).  The rest of Plaintiff's original complaint, including the topic of Defendant's violation

of the best pricing and price reduction clause of its GSA contract, was so vague that it does not provide specific evidence of the extent of Plaintiff's independent knowledge.

Because Plaintiff has amended her allegations so substantially, the court's jurisdictional decision on the remainder of Plaintiff's allegations rests on whether Plaintiff has proven that she has "direct and independent knowledge" of the information on which her allegations are based. Despite the court's specific instruction to Plaintiff to answer "when, where, and how" Plaintiff acquired the information underlying her allegations, Plaintiff has not proven by a preponderance of the evidence that she had direct or independent knowledge of most of the information on which her amended allegations are based. Plaintiff's third amended complaint, filed long after the government declined to intervene and after Plaintiff knew she would have to address the public disclosure and original source bars, describes in little detail when and how Plaintiff gained knowledge of Defendant's alleged misconduct.

Though Plaintiff continues to assert that she gained knowledge by virtue of her 2002-2004 position as the contract manager of Defendant's GSA contract with the United States government, Plaintiff's statements regarding how she got her knowledge are mostly conclusory. Likewise, though Plaintiff argues that "any similarities between the ultimate text of GSA's

2007 Draft Audit Report and the language of Plaintiff's complaint results from the flow of information from Plaintiff, her [former] co-relator and counsel to GSA and not the other way around," Plaintiff has not provided the court with any substantial evidence demonstrating what information she provided to the government. (Paper 111 ¶ 17). Plaintiff states that her allegations are not based on public disclosures, but she has not adequately shown the court that they are not. (Paper 111 ¶¶ 13(c), 16).

Plaintiff's best explanation of how she came to know about Defendant's alleged FCA violations is in her declaration, attached at the eleventh hour to her opposition to Defendant's motion to dismiss. (Paper 125, Attach. 4). The court is skeptical of plaintiff's assertions in her declaration, given that Plaintiff had ample time to come forth with more specific facts regarding her knowledge in her amended pleadings. Despite the weakness of this record, Plaintiff's status as the original source is analyzed here according to the claims in each count that have survived the statute of limitations.

**1.   Count One**

As discussed previously, Plaintiff's claims in count one are barred by the statute of limitations.

2.   **Count Two**

Most of Plaintiff's claims in count two are barred by the statute of limitations or barred because Plaintiff has not met her burden of proving that she is the "original source" of the information.   First, paragraphs 198 through 200 allege events beyond the statute of limitations.   Paragraph 197 states that "ADT knowingly continued to violate its duty to disclose all relevant details of its commercial systems pricing methodology to GSA each and every time it submitted updates and modifications to its Federal Supply Schedule after GSA approved ADT's 1996 contract."   The facts that Plaintiff cites as support for Paragraph 197 (Paper 111, ¶¶ 72-82) have been substantially amended since plaintiff's original complaint was filed.   In Plaintiff's original complaint, Plaintiff's allegations regarding this topic were not specific or detailed.   Plaintiff has not addressed where she obtained knowledge of the amended facts, and she has not established original source status for any claims related to paragraph 197.   Additionally, Plaintiff's assertion in paragraph 201 that Defendant "violated both contractual and FAR requirements that services offered to the Government under GSA contracts do not meet the definition of 'commercial services' offered to the Government under similar terms and conditions as they are offered to commercial customers" is based on the facts that were not in Plaintiff's

23

original complaint and Plaintiff has not addressed how she gained knowledge of that information.

The rest of Plaintiff's claims related to inflated labor charges in paragraphs 201 through 203 of count two appear to be based on facts (Paper 111 ¶¶ 94-132, 103-106 (in part), and 129-130) that were in her original complaint and which were fairly detailed and specific. The claims in paragraphs 201 thorough 203 of Plaintiff's third amended complaint, apart from the FAR allegation, will be permitted to proceed on the basis that Plaintiff had knowledge of their underlying facts before the public disclosures were made. As will be discussed later, though, these claims fail under Rule 12(b)(6).

### 3. Count Three

Additionally, Plaintiff fails to show how she obtained direct and independent knowledge of the information on which most of her count three claims are based. Plaintiff only discusses her knowledge as to two aspects of count three: (1) her allegation that ADT submitted invoices "for parts made by other manufacturers that had their own GSA Federal Supply Schedules without first notifying GSA that ADT was a reseller of such parts and/or that the same parts were available on Federal Supply Schedules of the actual manufacture[r]s" and (2) ADT knowingly submitted false and fraudulent claims to the Government when it submitted invoices "that included charges for

parts made by other manufacturers in countries not on the list of nations whose products are eligible for sale to the Government under th[e] Buy American Act and the Trade Agreements Act [("BAA/TAA")]." (Paper 111 ¶¶ 206, 207).

On the former assertion, Plaintiff alleges in her complaint that she was informed by an ADT employee that ADT changed part numbers so that the Government could not compare ADT's product price list to other GSA contractor's schedules. (Paper 111 ¶ 156). Similarly, Plaintiff asserts in her declaration that a second employee directed Plaintiff to change product numbers. (Paper 125, Attach. 4, ¶ 3). Plaintiff has met her burden of proving "original source" status for claims related to Defendant's submission of invoices that did not disclose that ADT had altered part identification numbers.

Likewise, in regard to the latter assertion, Plaintiff addresses her knowledge of Defendant's violations of the BAA/TAA by stating that she has delivered to the government a "CD Rom disk of electronic documents to support [Plaintiff and her original co-relator's] allegations" regarding those claims. (Paper 111 ¶ 13(b)). Additionally, Plaintiff reports that she noticed in the spring of 2003 that ADT was allegedly misreporting the country of origin for its parts. (Paper 125, Attach. 4, ¶ 9). Plaintiff has met her burden of establishing

that she has "original source" knowledge of the information on which her claim regarding the BAA/TAA is based.

Plaintiff does not meet her burden of proof as to being the "original source" of information for the remaining basis of her claims in count three.  Plaintiff discusses her knowledge for only one additional assertion that she makes in count three: that ADT did not offer sale prices to GSA that it offered to commercial customers.  (Paper 111 ¶ 210).  Plaintiff's declaration states that she "learned that special sale prices offered to commercial customers were not offered to GSA customers" because she received commercial group emails advertising the sales.  (Paper 125, Attach. 4, ¶ 11).  Plaintiff only states a conclusion regarding her knowledge on this point, reporting, "However, I know that ADT's GSA pricing was never discounted to reflect the same sale prices . . ." (*Id.*).  Thus, Plaintiff has not met her burden of establishing her "original source" status for the rest of the basis for her claims in count three.

### 4.   Count Four

Similarly, Plaintiff does not meet her burden to prove that she is the original source of the information that underlies most aspects of the claims in count four.  Plaintiff alleges that Defendant "made, used, and caused to be made and used, a series of false records and statements that were directed to GSA

and/or to Government purchasers buying parts and/or labor pursuant to ADT's 1996 Contract."  (Paper 122 ¶ 217).  Like count three, Plaintiff has met her burden for establishing that she is an "original source" of the information underlying her allegations concerning product identification numbers and compliance with the BAA/TAA.  (Paper 122 ¶¶ 217(g), (h)).  Also, as in count two, facts underlying Plaintiff's assertions regarding inflated labor charges were pled with sufficient detail in Plaintiff's original complaint.  (Paper 122 ¶ 217(f)).  Plaintiff has not met her burden, however, for the other assertions in count four because Plaintiff has not shown how she knew about the underlying facts.

**5.  Count Five**

Finally, Plaintiff has not established that she is the original source of information for count five.  Plaintiff alleges in count five that Defendant knowingly did not provide a one percent "Industrial Funding Fee" ("IFF") to GSA that it was obligated to pay.  Plaintiff addresses her knowledge of this allegation in her declaration, but provides conclusions instead of information as to how she learned of the alleged fraud.  Plaintiff states that she asked an ADT employee whether Defendant should be paying the discount and received an affirmative answer.  (Paper 125, Attach. 4, ¶¶ 7-8).  Plaintiff fails to report with any detail, however, how she learned of any

wrongdoing related to the IFF.  Plaintiff only reports that she reviewed "some GSA job files in the account services department" and that she "knew that ADT was not tracking the IFF . . . from [her] review of job files in the normal course of business." (Paper 125, Attach. 4, ¶ 8).  Plaintiff does not identify any files that she reviewed.  Thus, Plaintiff has not proven that she was an "original source" of information on which her claims regarding the IFF are based.

Overall, Plaintiff has not met her burden of establishing jurisdiction by alleging facts with "competent proof" for the majority of her claims.  *United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1048 (10th Cir. 2004), *cert. denied*, 545 U.S. 1139 (2005); *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337 (4th Cir. 2009) (dismissing a relator's claim under § 3730(e)(4) because the relator's allegations did not show exactly how and when he obtained direct and independent knowledge of the fraudulent acts alleged); *Hafter*, 190 F.3d at 1163 (denying plaintiff original source status because of a lack of "specific, particularized fact allegations showing which fraudulent activities" the plaintiff had witnessed, and "how he witnessed them and when.").

Considering the totality of the evidence, the court finds that Plaintiff has not established her "direct and independent knowledge" for her all of her allegations and therefore the

third amended complaint must be dismissed pursuant to the FCA's public disclosure bar for lack of subject matter jurisdiction apart from her claims related to the topics of inflated labor charges, product identification numbers, and country-of-origin identification for parts.

   **C.   31 U.S.C. § 3730(e)(3)**

   Section 3730(e)(3) of the FCA provides: "In no event may a person bring an action under subsection (b) which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party."   31 U.S.C. § 3730(e)(3).

   The purpose behind § 3730(e)(3) is to prevent "parasitic" *qui tam* actions, or actions that receive support or advantage from the "host" case without giving any useful or proper return to the government. *United States ex rel. S. Prawer & Co. v. Fleet Bank of Me.*, 24 F.3d 320, 327-28 (1st Cir. 1994).  If a *qui tam* action's sole purpose is to increase the amount of damages to the government, without providing additional information, it should not be regarded as providing useful or proper return to the government. *Id*.  The FCA encourages relators who have independently discovered information of fraud to come forward, while discouraging those plaintiffs who merely feed off previous disclosures of government fraud. *United States ex rel. Lowman*

*v. Hilton Head Health Sys., L.P.*, 487 F.Supp.2d 682, 688 (D.S.C. 2007) (citing *Siller*, 21 F.3d at 1347).

Defendant argues that Plaintiff's claims are barred by 31 U.S.C. § 3730(e)(3) because the allegations in the third amended complaint are based upon allegations that are the subject of an existing administrative proceeding. Defendant points out that the government is currently investigating and pursuing administrative remedies in separate proceedings against Defendant in connection with allegations that are identical to Plaintiff's allegations. Plaintiff counters that this court has already determined that her initial disclosures to the government could not be "based upon" an administrative proceeding because no such proceeding was in place at the time that Plaintiff filed her *qui tam* action. While Plaintiff is correct regarding her initial disclosures, Plaintiff has not met her burden of proof in establishing that the allegations she added to her amended complaint were not based on an administrative proceeding apart from her allegations regarding product identification numbers and country-of-origin identification for parts. Plaintiff has failed sufficiently to plead where, when, and how she obtained the information giving rise to her allegations. Thus, Plaintiff's action is jurisdictionally barred under § 3730(e)(3), apart from the claims she brings regarding inflated labor charges in count two

30

and the claims she brings regarding product identification numbers and country-of-origin identification numbers in count four, for which she has proved her knowledge apart from the administrative proceedings.

## III. Failure to State a Claim

### A.    12(b)(6) Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S.

266, 268 (1994), *rehearing denied*, 510 U.S. 1215 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), *cert. denied*, 510 U.S. 1197 (1994)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

To state a claim under the FCA, a plaintiff must show that there was "(1) [] a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay

out money or to forfeit moneys due (*i.e.* that involved a 'claim')." *Harrison*, 176 F.3d at 788.  Plaintiff must allege that defendant made a "claim for payment" from the government fisc.  *Id.* at 785, 789.

### B.   Rule 9(b)

Because Plaintiff alleges that Defendant engaged in fraud, her claims are subject to the heightened pleading standard under Fed.R.Civ.P. 9(b).  *Harrison*, 176 F.3d at 783-84.  Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  The word circumstances "is interpreted to include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'"  *Superior Bank, F.S.B. v. Tandem Nat'l Mortgage, Inc.*, 197 F.Supp.2d 298, 313-14 (D.Md.2000) (quoting *Windsor Assocs. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md.1983)).

The purpose of Rule 9(b) is to provide the defendant with sufficient notice of the basis for the plaintiff's claim, protect the defendant against frivolous suits, eliminate fraud actions where all of the facts are learned only after discovery, and safeguard the defendant's reputation.  *Harrison*, 176 F.3d at 784.  In keeping with these objectives, a "court should hesitate

to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Id.*

Several cases have described Rule 9(b)'s "who," "where," and "when" requirements in the context of the FCA. As to who, in FCA cases where the defendant is a corporate entity, Rule 9(b) requires the Plaintiff to name the individuals involved in the allegedly fraudulent conduct. *See, e.g.*, *United States ex rel. Robinson v. Northrop Corp.*, 149 F.R.D. 142, 145 (N.D.Ill. 1993) (stating Rule 9(b) requires a plaintiff asserting a FCA claim against a corporate defendant to specify the "identity and/or role of the individual employee involved in the alleged fraud."). As to what, a plaintiff must show a link between allegedly wrongful conduct and a claim for payment actually submitted to the government. *See, e.g.*, *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003) (noting Rule 9(b) "does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the

34

Government.").    Finally,  as  to  when,  Rule  9(b)  requires  a
Plaintiff to allege with particularity the dates of the supposed
fraudulent  conduct.    *See, e.g., United States ex rel. Cericola
v. Fed. Nat'l Mortgage Ass'n*, 529 F.Supp.2d 1139, 1146 (stating
that  Rule  9(b)'s  requirements  were  not  fulfilled  when,  among
other  deficiencies,  a  plaintiff's  complaint  alleged  that  FCA
violations  occurred  between  1995  and  1998,  but  did  not  allege
any specific dates).

    **C.   Analysis**

    The    following   discussion   will   analyze   those   purported
claims  in  counts  two,  three,  and  four  for  which  the  court  has
subject  matter  jurisdiction  and  that  may  have  occurred  within
the limitations period.

    **1.   Count Two**

    In  count  two,  Plaintiff  argues  that  Defendant  violated  the
31  U.S.C.  §  3729(a)(1)  by  submitting  claims  to  the  government
for  payment  that  combined  sales  for  parts  and  labor  under  its
1996  Contract.    As   discussed   previously,   the   court   has
jurisdiction  to  hear  Plaintiff's  claims  in  paragraphs  201
through  203  apart  from  Plaintiff's  claim  regarding  FAR  and
contractual  requirements  for  the  terms  and  conditions  of
services offered to the government.

    The  first  element  that  a  plaintiff  must  allege  in  a  FCA
claim  is  that  "there  was  a  false  statement  or  fraudulent  course

35

of conduct." *Harrison*, 176 F.3d at 788. The FCA, "[a]t a minimum" "requires proof of an objective falsehood." *United States ex rel. Roby v. Boeing Co.*, 100 F.Supp.2d 619, 625 (S.D. Ohio 2000), *citing Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1477-78 (9th Cir. 1996), *cert. denied*, 519 U.S. 865 (1996).

Plaintiff's count two does not state a claim because Plaintiff has not identified a false representation that Defendant made to the government. Plaintiff provides specific examples of when Defendant allegedly fraudulently overcharged the government for labor costs. (Paper 111 ¶¶ 107-128). Plaintiff alleges in each example that Defendant inflated labor costs in a bid or "price quote" to a government customer to "render the GSA 'most favored customer' pricing discounts on equipment effectively meaningless in bottom line pricing for combined 'systems' sales (i.e. equipment and labor)." (*Id.* at ¶ 103).

Plaintiff fails to recognize, however, that Defendant's bids were not representations of the actual cost of labor to Defendant but rather quotations to the government of what labor would cost if the government chose Defendant's bid. Here as in *United States ex rel. Bettis v. Odebrecht Contractors of California, Inc.*, 393 F.3d 1321, 1328 (D.C. Cir. 2005), Defendant's bids or quotations "did not purport to be an opinion or an estimate; rather, [but were] merely an offer to enter into

36

a contract." *Id.* (affirming a grant of summary judgment in favor of a defendant/contractor in a FCA suit on the basis that the plaintiff had not shown that the defendant made any false representations). Plaintiff has merely outlined the process that ADT employed to calculate labor costs for a series of bids. Though Plaintiff asserts that Defendant "charged" the government for work that included inflated labor costs, Plaintiff has not identified any particular claim for payment that actually included fraudulently inflated labor charges. (*See, e.g.*, Paper 111 ¶¶ 111, 130). Plaintiff assumes that Defendant submitted invoices to the government for these projects that included fraudulent representations.

Because Plaintiff has not identified a false representation, the remaining claims in count two will be dismissed for failure to state a claim.

**2. Count Three**

In count three, Plaintiff asserts that: (1) Defendant re-sold parts allegedly made by other manufacturers by changing product identification numbers and not reporting those changes to the government; and (2) Defendant sold parts made in other countries to the government without identifying their country-of-origin in violation of the BAA/TAA. (Paper 111 ¶¶ 206, 207). Plaintiff has failed to state a claim on either of these topics.

Plaintiff's claims regarding parts allegedly made by other manufacturers or parts made in other countries fail under 12(b)(6).   For both claims, Plaintiff alleges that parts were "listed" and "offered" to government customers on the Federal Supply Schedule, but does not identify any claim for payment from the government fisc.   Additionally Plaintiff does not meet Rule 9(b)'s requirements because she fails to identify the individuals involved in the allegedly fraudulent activity, information regarding particular contracts, and the dates on which any claim was submitted to the government.

Thus, Plaintiff's remaining claims under count three will be dismissed for failure to state a claim.

### 3.   Count Four

In count four, Plaintiff asserts that Defendant "made, used, and caused to be made and used, a series of false records" including (1) "false records and statements about the true cost of equipment it sold to Government purchasers and which fraudulently increased the labor charges for installation of equipment . . ."; (2) "false records submitted to ADT regarding the true manufacturer of products listed on ADT's Federal Supply Schedule from 1996 to June of 2006"; and (3) "false certifications and false records about compliance with the [TAA

or BAA].”[5]   (Paper 111 ¶¶ 217, 217(f), (g), and (h)).   Plaintiff concludes that Defendant's creation and use of false records violated 31 U.S.C. § 3729(a)(2).

31 U.S.C. § 3729(a)(2) holds liable any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government."   31 U.S.C. § 3729(a)(2).   To succeed on a § 3729(a)(2) claim, a plaintiff must prove that a defendant made a false record or statement and that it was used to get a false or fraudulent claim paid or approved by the government.   Thus, a plaintiff must prove a *prima facie* case of a § 3729(a)(1) violation in addition to proving that a defendant made and used a false record.   *See United States ex rel. Oliver v. Parsons Corp.*, 498 F.Supp.2d 1260, 1278 n.20 (C.D.Cal. 2006). Additionally, § 3729(a)(2) requires the plaintiff to show that the defendant intended for the government to rely on the false record as a condition of payment.   *Allison Engine Co. v. United States ex rel. Sanders*, 128 S.Ct. 2123, 2130 (2008).

Plaintiff's claims in count four fail to satisfy Rule 12(b)(6).   As discussed above, Plaintiff has not stated a claim for a § 3729(a)(1) violation related to a claim for payment that

---

[5] Though Plaintiff lists other allegedly fraudulent records in count four, the court only has subject matter jurisdiction over claims in paragraphs f, g, and h of the third amended complaint.

involved inflated labor charges, false product identification numbers, or country-of-origin information.  Also, Plaintiff has not shown that Defendant intended to have the government rely on its false records in paying it for a submitted claim.  In this regard, Plaintiff only alleges, "ADT and its officers, such as Mr. Jenkins, knew, or acted in deliberate ignorance of (or with reckless disregard for) the truth when making, using, or causing to be used the aforementioned false statements and records in furtherance of ADT's scheme to defraud [the government]." (Paper 111 ¶ 218).  Therefore, Plaintiff's count four claims do not meet the FCA's requirements to state a claim.

Furthermore, Plaintiff's count four does not fulfill Rule 9(b)'s standard of particularized pleading.  Plaintiff does not identify any specific record that was submitted to the government relating to her claims that Defendant "made, used, or caused to be made and used" "false records submitted to ADT regarding the true manufacturer of products listed on ADT's Federal Supply Schedule from 1996 to June of 2006" or "false certifications and false records about compliance with the [TAA or BAA]."  (Paper 111 ¶217, 217 (g), and h).  Additionally, Plaintiff has not alleged the dates on which the allegedly false records and claims were submitted or who submitted them.

Therefore, the claims in Plaintiff's count four will be dismissed for failure to state a claim.

**IV.   Plaintiff's Motion for Leave to File a Surreply and for Oral Argument**

Plaintiff's request for oral argument and for leave to file a surreply will be denied.  Plaintiff argues that Defendant made "factual misrepresentations" in Defendant's reply to Plaintiff's opposition to Defendant's motion to dismiss.  "Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."  *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md. 2003) (citing *Lewis v. Rumsfeld*, 154 F.Supp.2d 56, 61 (D.D.C. 2001)).   The issues that Defendant presented in its reply and that Plaintiff contests in its motion for leave to file a surreply and for oral argument are no longer at issue after the court's jurisdictional inquiry.   Furthermore, the court has assumed Plaintiff's facts to be true in analyzing her claims under Rules 12(b)(6) and Rule 9(b).   After voluminous briefing and Plaintiff's fourth opportunity to file a complaint in this case, no additional briefing is needed.

**V.   Conclusion**

A separate Order will follow embodying these rulings.

_____
            /s/
DEBORAH K. CHASANOW
United States District Judge
